WALLACE, Circuit Judge, concurring in part and dissenting in part: I concur in parts 2 and 3 of the disposition but dissent from part 1. To be eligible for cancellation of removal, an applicant must establish at least ten years continuous physical presence in the United States immediately preceding the date of application. 8 U.S.C. § 1229b(b)(l)(A). Our case law provides several ways in which this period of continuous physical presence may be interrupted, one of which is when the process culminating in an alien’s departure is “sufficiently formal” to constitute a break in continuous physical presence. Zarate v. Holder, 671 F.3d 1132, 1138 (9th Cir. 2012). Because I conclude that Manzana-rez-Santos’ conviction in state court and subsequent departure was a sufficiently formal process to terminate his continuous physical presence, I respectfully dissent from part 1 of the majority’s disposition. My disagreement with the majority is, at root, a disagreement over the proper frame of analysis. The majority treats this case as a “voluntary departure” case controlled by our decision in Ibarra-Flores v. Gonzales, 439 F.3d 614 (9th Cir. 2006). In Ibarra-Flores, petitioner appealed from an immigration judge’s (IJ) determination that he accepted “administrative voluntary departure” sufficient to interrupt his continuous physical presence by signing an unidentified document. We held this conclusion was not supported by substantial evidence because the record contained no indication petitioner had “knowingly and voluntarily” consented to the terms of a voluntary departure agreement. Id. at 620. We remanded to the IJ with instructions to take additional evidence and testimony as to whether petitioner knowingly and voluntarily consented to voluntary departure. Id. The instant appeal is not an Ibarra-Flores type case. Instead, the issue presented here is whether substantial evidence supports the Board of Immigration Appeals’ (BIA) determination that the process leading to Manzanarez-Santos’ departure was sufficiently formal to break his continuous physical presence. That makes this case more akin to Zarate v. Holder, 671 F.3d 1132 (9th Cir. 2012), than to Ibarra-Flores. It is Zarate that should guide our analysis. In Zarate, petitioner argued that the process culminating in his departure from the United States was not the sort of formal, documented process that breaks continuous physical presence. Id. at 1135. We disagreed. The petitioner in Zarate had been arrested while attempting to reenter the United States and was convicted in federal district court of possession of a false identification document. Id. at 1133. The petitioner’s sentence was conditioned, in part, on the expectation that immigration authorities would “cause the defendant to leave” the country. Id. Petitioner then served five days in jail, was returned to INS custody, and was then transported back to the Mexican border and released. We held this sequence of events provided substantial evidence for the Board’s determination that petitioner’s departure was “sufficiently formal” to constitute a break in his continuous physical presence. Id. at 1138. I would hold the same in this case. Here, Manzanarez-Santos (who was represented by counsel) pleaded guilty in Utah state court to filing a false credit report. Although the offense was not an immigration offense, Manzanarez-Santos’ immigration status was very much intertwined with his conviction and sentencing. For example, Manzanarez-Santos stated he was aware at the time of his appearance before the state judge that INS had an immigration detain-er on him. In addition, when the judge sentenced Manzanarez-Santos, he specifically took into account Manzanarez-Santos’ anticipated removal by federal immigration authorities. Furthermore, the conditions of Manzanarez-Santos’ probation provided that he was “not [to] enter the United States without legal authorization.” Finally, after serving his time in jail, Manzana-rez-Santos was turned over to the INS, accepted voluntary departure, and returned to Mexico. In my view, this sequence of events was sufficiently formal to constitute a break in Manzanarez-Santos’ continuous physical presence. Viewing this case through the lens of Zarate renders beside the point the majority’s conclusion that Manzanarez-Santos did not knowingly and voluntarily accept voluntary departure, Indeed, in Zarate we rejected this precise argument by petitioner, explaining that the issue in the case was not whether petitioner departed voluntarily but whether “the proceedings that did occur were sufficient to terminate his continuous physical presence.” Zarate, 671 F.3d at 1137, n.5. Such is the case here. The Board concluded that the sequence of events leading to Manzanarez-Santos’ departure was “a sufficiently documented and formalized process” that interrupted his continuous physical presence. The record does not .compel a contrary conclusion. The majority argues that Zarate is inap-posite because there we concluded that petitioner’s conviction in federal court and subsequent departure was the “functional equivalent of an adjudication of inadmissibility.” Id. at 1136 (internal quotation marks omitted). It is true that an implicit finding of inadmissibility formed part of our rationale in Zarate. But I do not read Zarate to require the Board to make a finding of inadmissibility before concluding that a process resulting in an alien's departure was sufficiently formal to terminate continuous physical presence. Nor did Za-rate hold that only proceedings in federal court meet the requisite level of formality. Instead, what Zarate requires is a holistic, . context-sensitive inquiry into the degree of formality of the process. Although an adjudication of inadmissibility will certainly suggest sufficient formality, Zarate does not require it. Here, the process culminating in Manzanarez-Santos’ departure— which did not include an adjudication of inadmissibility but did include a jail and probation sentence conditioned in part on Manzanarez-Santos’ immigration status— was “formal nonetheless,” Id. at 1136 (citation omitted), and therefore sufficient to break his continuous physical presence. To be sure, there are differences between Zarate and the instant case. For one thing, the petitioner in Zarate was arrested while attempting to reenter the United States without legal authorization, while here petitioner’s arrest and conviction in state court did not stem directly from violation of the immigration laws. For another, in Zarate, the evidence of record included a Record of Deporta-ble/Inadmissible Alien (Form 1-213) stating that the petitioner falsely claimed US citizenship, while here the record contains no such official immigration documentation. These differences, however, do not change my conclusion that Manzanarez-Santos’ departure was “sufficiently formal to constitute a break in his otherwise continuous physical presence.” Zarate, 671 F.3d at 1138 (alteration and citation omitted). As we acknowledged in Zarate, the evidence required to show a sufficiently formal departure “will vary from case to case.” Id. at 1135. Here, Manzanarez-San-tos returned to Mexico subsequent to a state court conviction and sentencing process that was intertwined with the issue of his immigration status. On this record, I would hold the Board had substantial evidence to conclude Manzanarez-Santos’ departure was sufficiently formal to break his continuous physical presence. Therefore, I respectfully dissent from part 1 of the majority’s disposition.